**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-01199

AMANDA KENNEDY, on behalf of herself and those similarly situated

      Plaintiff,

vs.

MOUNTAINSIDE PIZZA, INC.,
PRIMA PIZZA, INC.,
LONGHORN PIZZA, INC.,
SOUTHSIDE PIZZA, INC.,
BRENT HAMILL,
JOHN DOE CORP. 1-10, and
JOHN DOE 1-10,

      Defendants.

---

### CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

---

**Introductory Statement**

1.    Plaintiff Amanda Kennedy, on behalf of herself and all similarly-situated individuals, brings this action against Mountainside Pizza, Inc., Prima Pizza, Inc., Longhorn Pizza, Inc., Southside Pizza, Inc., Brent Hamill, John Doe Corp. 1-10, and John Doe 1-10 based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Colorado Wage Claim Act ("CWCA"), C.R.S. 8-4-101, *et seq.*, and the Colorado Minimum Wage Act ("CMWA"), C.R.S. 8-6-101, *et seq.*

2.      Defendants operate approximately 37 Domino's Pizza restaurants in Colorado, Wyoming, California, and Texas (the "Mountainside stores").

3.      Defendants repeatedly and willfully violated the FLSA and Colorado law by failing to adequately reimburse delivery drivers for their delivery-related and other work-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.      All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

5.      Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6.      Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers in Colorado pursuant to Fed. R. Civ. P. 23, to remedy violations of Colorado wage and hour law by Defendants.

I.    **Jurisdiction and Venue**

7.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims (First Claim for Relief).

8.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims (Second and Third Claims for Relief).

2

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claims herein occurred in this district.

## II.   Parties

### Plaintiff

### Amanda Kennedy

10.     Amanda Kennedy worked for Defendants in Denver, Colorado.

11.     Amanda Kennedy is an "employee" of all of the Defendants as defined in the FLSA and Colorado law.

12.     Amanda Kennedy has given written consent to join this action.

### Defendants

13.     Defendants form a single employer or single integrated enterprise as they share functional interrelation of operations, common management, centralized control of labor relations, and common ownership.

14.     Alternatively, Defendants constitute joint employers as they co-determine matters governing essential terms and conditions of employment, share the ability to hire, fire and discipline employees, share the ability to affect compensation and benefits, and share authority to direct and supervise employees' performance.

15.     During all relevant times, Defendants permitted employees to transfer or be shared by and between the Mountainside Domino's stores without retraining.

16.     Defendants have suffered or permitted Plaintiffs and other delivery drivers to work under the circumstances set forth below.

3

17.     Each of the Defendants have control or custody of the employment of Plaintiffs and similarly situated employees, and the place where Plaintiffs and similarly situated employees worked.

18.     Each of the Defendants had control over Plaintiffs' and similarly situated delivery drivers' working conditions.

19.     The Defendant entities are headquartered at 5314 Paylor Lane, Lakewood Ranch, Florida 34240.

**Mountainside Pizza, Inc.**

20.     Defendant Mountainside Pizza, Inc. is a Colorado corporation with its principal office street address at 3890 Kipling Street, Suite B, Wheat Ridge, CO 8003 and its principal office mailing address is 5314 Paylor Lane, Lakewood Ranch, FL 34240.

21.     Upon information and belief, Mountainside Pizza, Inc. is the entity that operates the Defendants' Domino's stores in Colorado.

22.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Mountainside Pizza, Inc. is owned and operated by Brent Hamill.

23.     Mountainside Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

24.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Mountainside Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to

all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

25.    Mountainside Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

26.    At all relevant times, Mountainside Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

27.    Mountainside Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

28.    At all relevant times, Mountainside Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

29.    Mountainside Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Prima Pizza, Inc.**

30.    Defendant Prima Pizza, Inc. is a California corporation with its principal office street address and its principal office mailing address is 5314 Paylor Lane, Lakewood Ranch, FL 34240.

31.    Upon information and belief, Prima Pizza, Inc. is one of the entities that operates the Defendants' Domino's stores in California.

5

32.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Prima Pizza, Inc. is owned and operated by Brent Hamill.

33.     Prima Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

34.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Prima Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

35.     Prima Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

36.     At all relevant times, Prima Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

37.     Prima Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

38.     At all relevant times, Prima Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

6

39.     Prima Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Southside Pizza, Inc.**

40.     Defendant Southside Pizza, Inc. is a California corporation with its principal office street address and its principal office mailing address is 5314 Paylor Lane, Lakewood Ranch, FL 34240.

41.     Upon information and belief, Southside Pizza, Inc. is one of the entities that operates the Defendants' Domino's stores in California.

42.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Southside Pizza, Inc. is owned and operated by Brent Hamill.

43.     Southside Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

44.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Southside Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

45.     Southside Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

46.     At all relevant times, Southside Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to,

hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

47.     Southside Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

48.     At all relevant times, Southside Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

49.     Southside Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Longhorn Pizza, Inc.**

50.     Upon information and belief, Defendant Longhorn Pizza, Inc. is a Texas corporation with its principal office mailing address is 5314 Paylor Lane, Lakewood Ranch, FL 34240.

51.     Upon information and belief, Longhorn Pizza, Inc. is one of the entities that operates the Defendants' Domino's stores in Texas.

52.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Longhorn Pizza, Inc. is owned and operated by Brent Hamill.

53.     Longhorn Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

54.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Longhorn Pizza, Inc. applies or causes to be

applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

55.     Longhorn Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

56.     At all relevant times, Longhorn Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

57.     Longhorn Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

58.     At all relevant times, Longhorn Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

59.     Longhorn Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**John Doe Corp. 1-10**

60.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Defendants own and operate other entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and Colorado law.

61.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Brent Hamill**

62.     Brent Hamill is the president and owner of all of the Defendant entities and of the Mountainside Domino's stores.

63.     Brent Hamill is individually liable to the Mountainside Domino's delivery drivers under the definitions of "employer" set forth in the FLSA and Colorado law because he owns and operates the Mountainside Domino's stores, serves as a manager of the Defendant entities, ultimately controls significant aspects of the Mountainside Domino's stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

64.     At all relevant times, by virtue of his role as president of the Mountainside Domino's stores, Brent Hamill has had financial control over the operations at each of the Mountainside Domino's stores.

65.     At all relevant times, by virtue of his role as president of the Mountainside Domino's stores, Brent Hamill has a role in significant aspects of the Mountainside Domino's stores' day to day operations.

66.     At all relevant times, by virtue of his role as president of the Mountainside Domino's stores, Brent Hamill has had control over the Mountainside Domino's stores' pay policies.

67.     At all relevant times, by virtue of his role as president of the Mountainside Domino's stores, Brent Hamill has had power over personnel and payroll decisions at the Mountainside Domino's stores, including but not limited to influence of delivery driver pay.

68.     At all relevant times, by virtue of his role as president of the Mountainside Domino's stores, Brent Hamill has had the power to hire, fire and discipline employees, including delivery drivers at Mountainside Domino's stores.

69.     At all relevant times, by virtue of his role as president of the Mountainside Domino's stores, Brent Hamill has had the power to stop any illegal pay practices that harmed delivery drivers at the Mountainside Domino's stores.

70.     Brent Hamill signed the settlement agreement on behalf of the entity Defendants in a prior lawsuit asserting nearly identical claims to those asserted here.

71.     At all relevant times, by virtue of his role as president of the Mountainside Domino's stores, Brent Hamill has had the power to transfer the assets and liabilities of the Mountainside Domino's stores.

72.     At all relevant times, by virtue of his role as president of the Mountainside Domino's stores, Brent Hamill has had the power to declare bankruptcy on behalf of the Mountainside Domino's stores.

73.     At all relevant times, by virtue of his role as president of the Mountainside Domino's stores, Brent Hamill has had the power to enter into contracts on behalf of each of the Mountainside Domino's stores.

74.     At all relevant times, by virtue of his role as president of the Mountainside Domino's stores, Brent Hamill has had the power to close, shut down, and/or sell each of the Mountainside Domino's stores.

75.     At all relevant times by virtue of his role as president of the Mountainside Domino's stores, Brent Hamill had authority over the overall direction of each of Mountainside Domino's stores and was ultimately responsible for their operations.

76.     The Mountainside Domino's stores function for Brent Hamill's profit.

77.     Brent Hamill has influence over how the Mountainside Domino's stores can run more profitably and efficiently.

**John Doe Individuals 1-10**

78.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, there are other Defendants who own an interest and/or have operational control over the Mountainside Domino's stores that also qualify as Plaintiff's "employer" under the FLSA.

79.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**III.   Facts**

**Class-wide Factual Allegations**

80.     During all relevant times, Defendants operated the Mountainside Domino's stores.

81.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, there are at least 37 Mountainside Domino's stores in Colorado, Wyoming, Texas, and California.

82.     The primary function of the Mountainside Domino's stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

83.     Some or all of the Mountainside Domino's stores employ delivery drivers.

84.     Plaintiff and the similarly situated employees Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Mountainside Domino's stores.

85.     All delivery drivers employed at the Mountainside Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers, and complete various tasks inside the restaurant when they were not delivering pizzas.

86.     The delivery drivers work "dual jobs"—one where they deliver food and receive tips, and another where they work inside the store completing non-tipped duties.

87.     During the relevant time period, Defendants' delivery drivers have been paid minimum wage minus a tip credit for hours delivering food.

88.     During the relevant time period, Defendants' delivery drivers have been paid minimum wage or slightly above minimum wage for all hours worked inside the store.

89.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

90.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline

expenses, automobile maintenance and parts, insurance, registration costs, financing, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

91.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing and registration, and incur cell phone and data charges all for the primary benefit of Defendants.

92.     The Mountainside Domino's stores do not track their delivery drivers' actual expenses and do not keep records of all of those expenses.

93.     One or more of the Mountainside Domino's stores do not reimburse delivery drivers for their actual expenses.

94.     None of the Mountainside Domino's stores reimburse delivery drivers for their actual expenses.

95.     One or more of the Mountainside Domino's stores do not reimburse delivery drivers at the IRS standard business mileage rate.

96.     None of the Mountainside Domino's stores reimburse delivery drivers at the IRS standard business mileage rate.

97.     One or more of the Mountainside Domino's stores do not reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

98.     None of the Mountainside Domino's stores reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

99. Delivery drivers at the Mountainside Domino's stores are reimbursed at a set rate for each mile they drive while completing deliveries that is less than the IRS standard business mileage rate.

100. For example, Plaintiff received between $.20 and $.30 per mile.

101. The Mountainside Domino's stores' reimbursement arrangements fully reimburse delivery drivers for their expenses.

102. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a. 2016: 54 cents/mile
   b. 2017: 53.5 cents/mile
   c. 2018: 54.5 cents/mile
   d. 2019: 58 cents/mile

103. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Colorado law.

104. At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at their stores.

105. All of Defendants' delivery drivers worked under circumstances similar to that of Plaintiff.

106. All of Defendants' delivery drivers were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

15

107.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses and other job expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

108.    Defendants failed to properly claim a tip credit from the wages of their delivery drivers because they failed to properly inform the drivers of the tip credit requirements of the FLSA. *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b).

109.    Defendants failed to properly claim a tip credit from the wages of their delivery drivers because they failed to actually pay the wage rate they told the drivers they would pay after accounting for unreimbursed expenses.

110.    Defendants have previously settled a similar vehicle under-reimbursement case with approximately 300 delivery drivers involving only FLSA claims. *See Nelson v. Mountainside Pizza, Inc., et al.*, No. 1:16-cv-2825, Doc. 95 (D. Colo. Oct. 4, 2018).

111.    Defendants have willfully failed to pay minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's Pizza stores.

**Plaintiff's Individual Factual Allegations**

112.    Amanda Kennedy worked as a delivery driver at one of Defendants' Mountainside Domino's stores located in Denver, Colorado from approximately November 2017 to May 2018.

113.    Amanda Kennedy worked dual jobs—one where she delivered food and receives tips, and another where she worked inside the store completing non-tipped duties.

114.    Amanda Kennedy was paid minimum wage minus a tip credit for the hours she worked completing deliveries. Specifically, she was paid between $6.28 and $7.18 per hour while on the road.

115.    Amanda Kennedy was paid Colorado minimum wage for the hours she worked inside the store.

116.    Amanda Kennedy was reimbursed on a per-mile basis, approximately $.20 to $.30 per mile.

117.    Amanda Kennedy was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

118.    Amanda Kennedy was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, registration costs, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

119.    Amanda Kennedy purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing, and incur cell phone and data charges all for the primary benefit of Defendants.

17

120.    Defendants did not track the actual expenses incurred by Amanda Kennedy.

121.    Defendants did not reimburse Amanda Kennedy based on her actual delivery-related expenses.

122.    Amanda Kennedy was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

123.    Defendants' reimbursement policy did not reasonably approximate the expenses incurred by Amanda Kennedy.

124.    During Amanda Kennedy's employment with Defendants, Defendants have failed to adequately reimburse Amanda Kennedy for automobile and other job-related expenses.

125.    Amanda Kennedy regularly made one to three deliveries per hour during the hours she worked as a delivery driver.

126.    Amanda Kennedy regularly drove about 3 miles per delivery.

127.    In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Amanda Kennedy's automobile expenses, every mile driven on the job decreased her net wages by approximately $.295 ($.545 - $.25) per mile. Considering her estimate of about 3 average miles per delivery, Defendants under-reimbursed her about $.89 per delivery ($.295 x 3 miles).

18

128.   Thus, while making deliveries (assuming 2 deliveries per hour), Amanda Kennedy "kicked back" to Defendants an average of approximately $1.78 per hour ($.89 per delivery x 2 deliveries per hour).

129.   Defendants did not properly inform Amanda Kennedy of the tip credit requirements of the FLSA.

130.   Defendants failed to pay Amanda Kennedy the tipped wage rate they promised they would pay her, therefore they were not permitted to claim a tip credit from her wages.

131.   As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Amanda Kennedy minimum wage as required by law.

### Collective Action Allegations

132.   Plaintiff brings the First Count on behalf of herself and

All similarly situated current and former delivery drivers employed at the Mountainside Domino's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

133.   At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile

expenses and other job-related expenses.  Plaintiff's claims are essentially the same as those of the FLSA Collective.

134.   Defendants' unlawful conduct is pursuant to a corporate policy or practice.

135.   Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

136.   Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

137.   Defendants are aware or should have been aware that they are required to inform employees of the FLSA tip credit requirements before they are permitted to claim a tip credit against the employee's wages.

138.   Defendants' unlawful conduct has been widespread, repeated, and consistent.

139.   The FLSA Collective members are readily identifiable and ascertainable.

140.   For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

141.   In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

142.    Plaintiff brings the Second and Third Counts under the Federal Rule of Civil

Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the
> Mountainside Domino's stores in the State of Colorado from the date
> three years prior to the filing of the complaint to the date of final judgment
> in this matter (the "Rule 23 Class").

143.    Excluded from the Rule 23 are Defendants' legal representatives, officers,

directors, assigns, and successors, or any individual who has, or who at any time during

the class period has had, a controlling interest in Defendants; the Judge(s) to whom this

case is assigned and any member of the Judges' immediate family; and all persons who

will submit timely and otherwise proper requests for exclusion from the Rule 23 class.

144.    The number and identity of the Rule 23 class members are ascertainable

from Defendants' records.

145.    The hours assigned and worked, the positions held, and the rates of pay

and reimbursement for each Rule 23 Class Member are determinable from Defendants'

records.

146.    For the purposes of notice and other purposes related to this action, the

names and contact information of Rule 23 Class Members are readily available from

Defendants.

147.    Notice can be provided by means permissible under Federal Rule of Civil

Procedure 23.

148.   The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

149.   There are more than 50 Rule 23 Class members.

150.   Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

151.   Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to reimburse for expenses.

152.   Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Colorado wage law.

153.   Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.   Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

154.   Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

155.   Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

156.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

157.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

158.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Defendants and other employers throughout the state violate the Colorado wage and hour law. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

159.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

160.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class members individually and include, but are not limited to:

       a.    Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper Colorado minimum wage rate for all hours worked;

b.  Whether Defendants required Plaintiff and the Rule 23 Class members to drive their own cars for work;

c.  Whether Defendants failed to reimburse automobile expenses, gasoline expenses, and other job-related expenses, as described herein, causing Plaintiff and the Rule 23 Class members' wages to drop below legally allowable minimum wage and overtime;

d.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove completing deliveries for Defendants;

e.  Whether Defendants recorded Plaintiff and the Rule 23 Class members' actual expenses;

f.  Whether Defendants properly paid Plaintiff and the Rule 23 Class members for hours worked in a non-tipped capacity;

g.  Whether Defendants' timely paid Plaintiff and the Rule 23 Class;

h.  Whether Defendants took impermissible deductions from the wages of Plaintiff and the Rule 23 Class;

i.  Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

j.  The nature and extent of class-wide injury and the measure of damages for those injuries.

161.    In recognition of the services Plaintiff have rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## IV.    Causes of Action

**FIRST CLAIM FOR RELIEF**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

162.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

163.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

164.    Defendants failed to properly inform Plaintiff and the FLSA Collective of the requirements for taking a tip credit under the FLSA.

165.    Defendants paid Plaintiff and the FLSA Collective a tipped wage rate for all hours worked completing deliveries, and state minimum wage for all hours worked inside the store.

166.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

167.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

168.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

169.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## SECOND CLAIM FOR RELIEF
### Failure to Pay Minimum Wages—C.R.S. 8-6-101, *et seq.*
### (On Behalf of Plaintiff and the Rule 23 Class)

170.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

171.    Each Defendant has at all times been an "employer" of Plaintiff and the Rule 23 Class members within the meaning of the Colorado minimum wage law.

172.    Defendants failed to pay Plaintiff and the Rule 23 Class members all minimum wages owed.

173.    Defendants conduct and practices, as described herein, were willful and intentional.

174.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff the Rule 23 Class members for unpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

## THIRD CLAIM FOR RELIEF
### Colorado Wage Claim Act—C.R.S. 8-4-101, *et seq.*
### (On Behalf of Plaintiff and the Rule 23 Class)

175.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

176.    Each Defendant has at all times been an "employer" of Plaintiff and the Rule 23 Class members within the meaning of the Colorado Wage Act.

177.    Defendants failed to pay Plaintiff and the Rule 23 Class members in a timely manner as required by C.R.S. 8-4-103(1).

178.    Defendants have taken unlawful deductions from the wages of Plaintiff and the Rule 23 Class members by failing to properly reimburse for delivery-related expenses. *See* C.R.S. 8-4-105.

179.    Defendants conduct and practices, as described herein, were willful and intentional.

180.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff the Rule 23 Class members for unpaid wages, liquidated damages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

**WHEREFORE**, Plaintiff Amanda Kennedy prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

27

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure under Colorado state law.

D.     Designation of Plaintiff as a representative of the Rule 23 Class and counsel of record as Class Counsel.

E.     Declaratory judgment that the practices complained of herein are unlawful under the Colorado Revised Statutes and regulations promulgated thereunder.

F.     An award of unpaid minimum wages, unreimbursed expenses, unlawful deductions, and liquidated damages due under the FLSA and Colorado wage laws.

G.     An award of prejudgment and post-judgment interest.

H.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.     Such other legal and equitable relief as the Court deems appropriate.


## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

DATED: April 24, 2019

Respectfully submitted,


**BILLER & KIMBLE, LLC**

*/s/ Andrew Kimble*

Andrew P. Kimble

28

Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
akimble@billerkimble.com

**LAW OFFICE OF DAVID
LICHTENSTEIN, LLC**

David Lichtenstein
Matt Molinaro
Kristina Rosett
Law Office of David Lichtenstein, LLC
1556 Williams St., Suite 100
Denver, CO 80218
Telephone: (303) 831-4750
dave@lichtensteinlaw.com
matt@lichtensteinlaw.com
kristina@lichtensteinlaw.com

Counsel for Plaintiff and the putative class and
collective