IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-01199-CMA-STV

AMANDA KENNEDY, on behalf of herself and those similarly situated,

    Plaintiff,

v.

MOUNTAINSIDE PIZZA, INC., and
BRENT HAMILL,

    Defendants.

---

**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL**

---

Before the Court is Plaintiff's Unopposed Motion for Final Settlement Approval. (Doc. # 176.) The Court, having reviewed Plaintiff's Unopposed Motion for Final Settlement Approval and considered the arguments made during the Final Approval Hearing, grants Plaintiff's Motion.

## I.    BACKGROUND

This is a wage and hour lawsuit brought on behalf of a class of pizza delivery drivers who worked at the Domino's Pizza stores allegedly owned and operated by Defendants Mountainside Pizza, Inc., and Brent Hamill. *See* (Doc. # 1.) Plaintiff filed her Complaint on April 24, 2019. *See* (*id.*) On June 28, 2019, the parties filed a Joint Motion to Stay Proceedings to explore settlement of this action. *See* (Doc. # 27.) On July 2, 2019, the Court granted in part and denied in part the parties' Joint Motion. *See* (Doc. #

1

30.) The Court granted the parties' request for a stay, but declined to approve the parties' proposed notice. (*Id.*)

The parties were unable to reach a settlement during the initial stay. *See* (Doc. # 39.) The parties then briefed a number of issues, including a motion to dismiss (Doc. # 42), cross-motions for summary judgment (Doc. ## 64 and 65), and a motion to send notice (Doc. # 40), among others. On August 26, 2020, the Court granted Defendants Motion for Summary Judgment and denied Plaintiff's Motion for summary judgment. The parties then attended mediation on May 5, 2021 that resulted in the Settlement Agreement now before this Court.

Plaintiff's primary claim in this lawsuit is that Defendants paid delivery drivers at or close to minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc., but failed to sufficiently reimburse the drivers for these costs. Plaintiff maintains that employers must reimburse their employees for these costs. Plaintiffs claim that Defendants failed to reasonably approximate the expenses associated with employees' business use of their personal vehicles and have not adequately reimbursed the delivery drivers for all of their expenses. Plaintiffs claim that Defendants' reimbursement practices result in a violation of the Fair Labor Standards Act and Colorado wage and hour laws. Defendants deny Plaintiff's claims and believe they paid and reimbursed their delivery drivers properly. Defendants also deny that Plaintiffs' claims are proper for class or collective action treatment, except for purposes of settlement.

Defendants deny all allegations of unlawful conduct and expressly deny that they under-reimbursed their delivery drivers.  Defendants allege that the reimbursements

2

paid more than cover driving expenses for Plaintiff and putative class members. Moreover, Defendants assert that Plaintiff has not provided sufficient evidence of his actual expenses to support his claim that Defendants' reimbursement was inadequate. Defendants also maintain they are not required to reimburse at the IRS rate or reimburse actual expenses, but instead may reasonably approximate the expenses associated with employees' business use of their personal vehicles. Finally, it is Defendants' position that if the matter were to proceed, Plaintiff would be unable to satisfy the criteria for certifying this matter as a class or collective action.

## II.   THE SETTLEMENT AGREEMENT

The parties' Settlement Agreement creates a Settlement Fund of $1,595,000.00. After deducting administration costs, attorney's fees, litigation expenses, and the service awards for Plaintiffs, class members will each receive a *pro rata* share of the Settlement Fund based on (1) the number of miles they drove during the settlement period and (2) whether they filed an opt-in form in this lawsuit.

The distributions are as follows:

   **i.** Distribution

   **a)** The amount of the Settlement Amount remaining after the payment of court-approved attorneys' fees, costs, expenses, service awards, claims administration costs, (referred to as the "Class Fund"), will be distributed to the Class Members (including the Opt-in Subclass) who do not exclude themselves as follows:

   **1.** Each Class Member's check will be equal to the Class Member's prorated share of the Class Fund based on the miles driven (or if not available, a suitable proxy) by each Class Member during the Class Period, divided by the total miles driven by all Class Members during the Settlement Period.

       **2.** The exception is that each mile driven by the Opt-in Subclass members in the Class Period will count as 1.25x for miles driven prior to May 5, 2021. The intent of this distribution method is to recognize that the Opt-in Subclass members potentially preserved more of their claims arising prior to May 5, 2021.

       **3.** Within 40 days of the Court granting final approval of this Settlement Agreement, the Administrator will issue a check to each Class Member who does not exclude themselves according to the above formula, representing a portion of the total amount due.

  **b)** Checks may be cashed or negotiated within 180 days of being issued. After 180 days, the check will be void. The face of each check will contain the following language: "Void after 180 days." The proceeds of any voided checks will be distributed to the Contingency Fund.

**ii.** Contingency Fund

  **a)** The amount of any uncashed checks from the Class Fund will be retained in QSF and referred to as the "Contingency Fund."

  **b)** Class Members may request that the Administrator reissue stale checks (i.e., checks that were not cashed within 180 days) and the Administrator shall reissue said checks 14 days after Notice to Class and Defendants' Counsel unless a dispute arises.

  **c)** Class Members can make a claim against the Contingency Fund via email, U.S. mail, or through Class Counsel by providing name and social security number (or if social security number is not available, such other form of identification as reasonably requested by the Administrator to confirm the identity of the Class Member). The Administrator may request any additional identifying information or documents (if any) that the Administrator reasonably believes necessary to confirm the identity of the Class Member and status as Class Member.

  **d)** Distributions from the Contingency Fund shall be in the amount to replace a check previously distributed (less administrative expenses incurred for such replacements to the extent such are incurred by Claims Administrator) and will be distributed within 14 days after Notice to Class and Defendants' Counsel of the submission of a valid claim being received by the Administrator.

      **e)**    To the extent that there is a dispute regarding this process, the Parties and their Counsel will attempt to informally resolve the dispute. If informal resolution is unsuccessful, the Parties request the assistance of the Claims Administrator, or if the Claims Administrator cannot resolve the dispute, the Parties shall submit the dispute to the Court for assistance in reaching resolution.

      **f)**    Checks may be cashed or negotiated within 180 days of being issued. After 180 days, the check will be void. The face of each check will contain the following language: "Void after 180 days." The proceeds of any voided checks will be distributed to the Contingency Fund.

      **g)**    Any unclaimed amounts in the Contingency Fund as of May 5, 2024 will be distributed to Mountainside Pizza, Inc. Distributions shall be made no later than May 31, 2024.

  **iii.**    Each check paid to a Class Member will be treated as expense reimbursement up to the IRS rate, which shall be a blended IRS rate of $.55 for purposes of this settlement the parties have agreed to. Any amounts paid above that will represent liquidated damages and will not be considered wages or subject to withholding. A Form 1099 will issue to Class Members for monies paid as liquidated damages.

Settlement Agreement, ¶ 4(C).

Opt in Plaintiffs and those who cash or negotiate their check agree to the following release of claims:

> By cashing or negotiating this check, I have agreed to join the lawsuit *Amanda Kennedy v. Mountainside Pizza, Inc., et al.*, Case No. 1:19-cv-1199-CMA-STV (District of Colorado) (the "Lawsuit") and agree to be bound to the Settlement and Release Agreement in the Lawsuit. I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I may or might have against Defendants or any of the Released Parties (as defined by the Settlement and Release Agreement) for the wage and hour claims that were asserted in the Lawsuit or arising out of the facts asserted in the Lawsuit, which accrued at any time between April 1, 2016 through May 5, 2021, including claims relating to failure to pay wages, the under-reimbursement of mileage and any other business expenses, unlawful deductions, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, untimely payment claims, and any related common law and equitable claims (e.g., breach of contract, unjust enrichment, etc.), including

5

> any related claims for liquidated damages, penalties, attorneys' fees and costs, taxes (if applicable), service awards, and any interest, that could be pursued under the federal Fair Labor Standards Act and any parallel federal, state, local, or municipal wage and hour laws, including those of Colorado, and any applicable federal, state, local or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit, including the right to arbitrate said claims.

Settlement Agreement, ¶ 6(D). Those who did not opt in and do not cash their check will release their state law claims, as described below, but will not release their FLSA claims:

> Each Class Member who does not opt-out of the Settlement releases all wage and hour claims accrued from April 1, 2016 through May 5, 2021, arising out of the facts asserted in the Lawsuit that were made against Defendants or the Released Parties, including claims relating to failure to pay wages, the under-reimbursement of expenses, unlawful deductions, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, and any related common law and equitable (e.g., breach of contract, unjust enrichment, etc.) claims, including any related claims for liquidated damages, penalties, attorneys' fees and costs (including claims administration fees), and interest, that could be pursued under Colorado Minimum Wage Act, the Colorado Wage Claim Act, and any applicable state, local or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit, including the right to arbitrate said claims.

Settlement Agreement, ¶ 6(C).

The Settlement Agreement also allows any class member who does not timely cash his/her check to request the Claims Administrator reissue his or her check at any time until May 5, 2024. Settlement Agreement, ¶ 4(C). The Court retains continuing jurisdiction over the Action to enforce, interpret, and otherwise implement the settlement.

The parties hired a Claims Administrator to distribute the Notice of Settlement. Notice was sent to 2,227 class members. *See* (Doc. # 176 at 4–5.) Defendants also complied with the Class Action Fairness Act ("CAFA") by sending notices to the appropriate government officials. *See* (*id.*)

The Settlement Agreement provides for payment of attorneys' fees in the amount of 1/3 of the Settlement Fund, reimbursement of litigation expenses, administrative costs, and service awards to Plaintiff Amanda Kennedy and Ginger Dally.

### III.   ANALYSIS

**A.   CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES**

The Court hereby certifies the following Rule 23 settlement class:

> All current and former Delivery Drivers employed by Mountainside Pizza, Inc., from April 1, 2016 through May 5, 2021 (the"Class Period") who do not exclude themselves, with the exception of those Delivery Drivers who settle claims in Nelson v. Mountainside Pizza, Inc. to the extent that those claims were released through February 10, 2017..

The Settlement Class meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3) for purposes of settlement.[1] Federal Rule of Civil Procedure 23(a)(1) is satisfied because there are 2,227 class members, and thus, joinder is impracticable. (Doc. # 171 at 15.) Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(2) because Plaintiff and the class members share common issues of fact and law. Plaintiff alleges that Defendants' reimbursement policy harmed all of the class members in the same way. Defendants do not contest that commonality is satisfied for settlement purposes.

---

[1] The Court acknowledges that Defendants agreed to class certification pursuant to Rule 23 and collective action certification pursuant to Section 216(b) for settlement purposes only.

7

For the same reason, Plaintiff satisfies the typicality requirement in Federal Rule of Civil Procedure 23(a)(3) because Plaintiff's claims arise from the same factual and legal circumstances that form the basis of the class members claims. (Doc. # 171 at 16.) Defendants do not contest that typicality is satisfied for settlement purposes.

Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that she has interests antagonistic to or at odds with those of class members.

Plaintiff also satisfies Federal Rule of Civil Procedure 23(b)(3). Class members' common factual allegations and legal theory—that Defendants under-reimbursed the delivery drivers, paid them at the wrong rate for some hours, and took improper deductions from wages—predominate over any factual or legal variations among class members. Defendants do not contest predominance is satisfied for settlement purposes.

The Court appoints Biller & Kimble, LLC, and The Law Office of David Lichtenstein, LLC as class counsel because they meet all of the requirements of Rule 23(g).

Finally, the Court finds that the Class Notice process undertaken by the Claims Administrator met the requirements of Rule 23(e)(1), and the government notices provided met the requirements of CAFA. (Doc. # 176 at 4–5.)

The Court also finds that all FLSA opt in Plaintiffs are properly joined to the case, and that the case is properly certified as a collective action pursuant to Section 216(b) of the FLSA.

The Court grants certification of a Rule 23 and FLSA Section 216(b) settlement class of Defendants' delivery drivers allegedly employed by Defendant Mountainside Pizza, Inc. from April 1, 2016 through May 5, 2021.

**B.     THE PARTIES' SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable."

As to the first factor, this case has been pending for over two and a half years, during which the parties have briefed several motions and have engaged in formal discovery. Counsel for both parties are well-versed in pizza delivery driver litigation, having litigated a number of cases across the country, and were therefore able to evaluate the strengths and weaknesses of the case based on the discovery exchanged. The parties proceeded to mediation to resolve this dispute, and there is no evidence of collusion. Based on the information provided, the Court finds that the settlement is the product of fair and honest negotiations.

The Court also finds that there are serious questions of law and fact in this case that likely would have affected the class members' chances at recovery. Defendants argue they properly compensated all of their delivery driver employees. In addition, the parties dispute several issues, including class certification, which statute of limitations applies, and to what extent state law penalties and/or liquidated damages would be available. As a result, the outcome of the litigation for either party is far from settled.

Given the inherent uncertainty in continuing litigation of these issues, the Court finds that this factor weighs in favor of approving the parties' settlement agreement.

The Court next considers whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. Continued litigation would likely lead to additional motion practice, trial, and an appeal. Under the parties' settlement agreement, class members will receive a pro rata share of $1,595,000, less attorney's fees and other adjustments. *See* (Doc. # 171-1, Section 4.) Given the risks and costs of protracted litigation and uncertainty surrounding class members' ability to recover, the Court finds that the immediate recovery provided for in the parties' settlement agreement outweighs the possibility of greater future relief.

The fourth factor also weighs in favor of final approval of the parties' settlement. Here, class counsel has extensive experience representing plaintiffs in wage and hour law cases and in class actions. *See* (Doc. # 171 at 7–8.) In Plaintiff's Unopposed Motion, counsel states that "given the strengths and weaknesses of the claims and collectability, this settlement is fair, adequate, and reasonable. *See* (*id.* at 8.)

Finally, no class members objected to the settlement, nor have any class members requested exclusion from the settlement. *See* (Doc. # 176 at 6.) Class members' apparently positive response to the settlement is further evidence that it is fair, adequate, and reasonable.

The Court therefore approves the parties' Settlement Agreement as fair, adequate, and reasonable pursuant to Fed. R. Civ. P. 23(e)(2.

Likewise, the Court approves the parties' Settlement Agreement and determines that the settlement is a reasonable compromise of a bona fide dispute of the claims and

10

defenses in this matter and there is nothing in the record to suggest that the settlement would otherwise frustrate the implementation of the FLSA.

**C.      FEES, EXPENSES, AND SERVICE AWARDS**

Plaintiff's Counsel asks the Court to approve an attorneys' fees award of one-third of the Settlement Fund, *i.e.*, $531,666.67. Defendants do not object to the requested fee award. In granting preliminary approval, the Court provisionally approved Plaintiff's Counsel's request for fees and costs, and explained that the fees and costs would be finally approved after taking into account any objections and argument at the final fairness hearing. The Notice period is closed, and no class members objected to the settlement or the requested fees and costs.

It is common in the Tenth Circuit to examine the reasonableness of a fee request through a percentage of recovery analysis. The Court finds this request for attorneys' fees to be fair, adequate, and reasonable, and therefore grants Plaintiff's Counsel's request for attorneys' fees in the amount of $531,666.67.

The Court also grants Plaintiff's Counsel's request for reimbursement of litigation costs in the amount of $38,708.79 and approves the claims administration costs of $19,999.02 to date as fair, adequate, and reasonable.

The Court also approves the request for service awards in the amount of $8,000 to Amanda Kennedy and $2,000 to Ginger Dally. These plaintiffs provided valuable insight to Class Counsel throughout the case, and their efforts resulted in substantial payments to a class of over 2,000 minimum wage pizza delivery drivers. The requested service awards are reasonable. Accordingly, the Court grants Plaintiffs' request for service awards in the amount set forth herein.

11

## IV. CONCLUSION

Having reviewed Plaintiffs' Unopposed Motion for Final Settlement Approval, the Court GRANTS the motion. (Doc. # 176.) Settlement class members are permanently enjoined from prosecuting against the Released Parties (as defined in the Agreement) any and all of the Released Claims (as defined in the Agreement).

This action is hereby DISMISSED with prejudice, with the Court to retain jurisdiction to enforce the Agreement. The Parties are ordered to carry out the settlement according to its terms.

DATED: December 13, 2021

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
United States District Judge